**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTONY ZEPEDA GALICIA**, <br><br> *Petitioner*, <br><br> v. <br><br> **JAMISON, J.L., Warden, Federal Detention Center, Philadelphia, et al.**, <br><br> *Respondents.* | **Case No. 2:26-cv-02902-JDW** |

## MEMORANDUM

Our country's immigration laws are filled with rules that apply to aliens like Antony Zepeda Galicia that would be hard to stomach if applied to citizens. That might feel unfair, but Congress has broad power to regulate the immigration system, and the Supreme Court has held that its actions in that sphere can exceed what it can do in dealing with citizens. It might feel unfair to Mr. Zepeda Galicia, but that's not enough to establish a constitutional violation, so I will deny his request for habeas relief.

## I.     BACKGROUND

### A.     Mr. Zepeda Galicia's Detention

Mr. Zepeda Galicia is a citizen of Guatemala. In October 2016, he entered the United States without inspection near San Deigo, California, along with his sister and mother. At the time of his entry, Mr. Zepeda Galicia was a juvenile. Department of Homeland Security officers encountered Mr. Zepeda Galicia soon thereafter, detained

him, initiated removal proceedings, and released him to live in Trenton, New Jersey, with his father. Mr. Zepeda Galicia has resided there ever since.

On April 27, 2026, the Newtown Township Police Department arrested Mr. Zepeda Galicia and charged him with retail theft (taking merchandise), 18 Pa.C.S § 3929(A)(1), and making a false identification to a law enforcement officer, 18 Pa.C.S § 4914(A), in connection with an investigation of a shoplifting incident. The next day, U.S. Immigration and Customs Enforcement lodged a detainer against Mr. Zepeda Galicia and detained him at the Federal Detention Center in Philadelphia, Pennsylvania. Officials then transferred him to the Pike County Correctional Facility in Pennsylvania.[1]

### B.    Procedural History

On May 1, 2026, Mr. Zepeda Galicia, via counsel, filed a Verified Petition For Writ Of Habeas Corpus. He alleged that by detaining him without providing him a bond hearing, Respondents violated the Immigration and Nationality Act, the Administrative Procedure Act, and the substantive and procedural aspects of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Respondents opposed Mr. Zepeda Galicia's Petition, and I held oral argument on July 1, 2026. After receiving supplemental briefs from the Parties, the Petition is ripe for review.

---

[1]    As I noted in a prior Order, Respondents' transfer of Mr. Zepeda Galicia outside of this judicial District does not divest the Court of jurisdiction over his habeas Petition because he was still in this District when he filed it. See *Khalil v. President, United States*, 164 F.4th 259, 271 (3d Cir. 2026).

## II.    LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States ... in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). The burden is on a petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    ANALYSIS

### A.    Section 1226(c)(1)(E)

Section 1226(c) of the INA is a mandatory detention provision. As such, aliens[2] detained pursuant to this statute are not entitled to a bond hearing following their detention. In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to the statute's requirement of detention without a bond hearing pending removal proceedings for aliens who had been convicted of certain crimes. Since then, Congress amended Section 1226(c) via the Laken Riley Act and expanded the statute's mandatory detention authority to cover aliens authorities have arrested or charged with certain offenses, even without a conviction. Relevant here, the statute requires the Attorney General to take into custody any alien who "(i) is inadmissible under paragraph

---

[2]    Consistent with my practice in similar recent cases, I use the term "alien" to mirror the INA's statutory language.

3

(6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for ...

acts which constitute the essential elements of any burglary, theft, larceny, shoplifting[.]"

8 U.S.C. § 1226(c)(1)(E).

Mr. Zepeda Galicia does not dispute that the Laken Riley Act applies to him. Indeed,

he is inadmissible under both 8 U.S.C. §§ 1182(a)(6)(A)(i)[3] and 1182(a)(7)(A)(i)(I)[4], and he

was arrested for, and then charged with, retail theft in connection with a shoplifting

incident.[5] Instead, he contends that as applied to him, Section 1226(c)(1)(E) is

unconstitutional because it violates his substantive and procedural due process rights.

## B.    Due Process

"The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]'

any 'person ... of ... liberty ... without due process of law.' Freedom from imprisonment—

from government custody, detention, or other forms of physical restraint—lies at the heart

of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quotation

omitted). At the same time, however, "detention during [removal] proceedings is a

---

[3]    "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

[4]    "[A]ny immigrant at the time of application for admission ... who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title ... is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

[5]    Mr. Zepeda Galicia disputes those charges, but he does not dispute the fact that he was arrested and charged with theft.

constitutionally valid aspect of the process[.]" *Demore*, 538 U.S. at 511 (citation omitted).

Indeed, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quotation omitted). This includes the categorical, mandatory detention of certain classes of aliens pending their removal proceedings, including aliens,[6] unaccompanied juvenile aliens,[7] and members of the Communist party.[8] Neither the Supreme Court nor the Third Circuit has confronted whether the categorical detention of aliens arrested or charged with theft-related crimes violates due process.

The Supreme Court has explained that outside criminal proceedings, government detention violates the Due Process Clause unless the detention is ordered "in certain special and 'narrow' nonpunitive 'circumstances,' where a special justification ... outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (quotations omitted). The Parties agree[9] that to satisfy substantive due process, civil detention must "bear a reasonable relation to the purpose for which the individual was committed." *Id.* (quotation omitted) (cleaned up). This is an "unexacting" standard. *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Government has made the necessary showing to surpass that low bar.

---

[6]      *Id.* at 531.
[7]      *Reno v. Flores*, 507 U.S. 292, 305-306 (1993).
[8]      *Carlson v. Landon*, 342 U.S. 524, 541 (1952).
[9]      *See* ECF No. 16 at 2; ECF No. 17 at 2.

Consistent with the well-recognized statutory goals of 1226(c),[10] the Government asserts two important interests in detaining inadmissible aliens like Mr. Zepeda Galicia who have been arrested or charged with theft: (1) ensuring the alien's appearance at removal proceedings; and (2) protecting the public from aliens who have been involved in certain types of crimes. Unlike in *Denmore*, the Laken Riley Act does not include legislative findings that I can consider in determining the relationship between Mr. Zepeda Galicia's detention and the Government's purpose in detaining him. Although the Act does not contain an express statement of legislative purpose or include legislative findings, the passage of the Act, itself, "expresses Congress's concern that aliens unlawfully present in the United States who are arrested for theft-related offenses and other specific offenses may present a danger to the community or a risk of flight." *Oldacre v. Arteta*, No. 26-cv-2672, 2026 WL 1398650, *7 (S.D.N.Y. May 19, 2026), *amended in part,* 2026 WL 1718184 (S.D.N.Y. June 12, 2026).

In addition, other information, such as anecdotal reports and statements during floor debates, sheds light on the purpose of detention under the Act. The Act takes its name from Laken Riley, who was murdered by a Venezuelan alien who had crossed into

---

[10]     "The statute, says the Government, has two regulatory goals: 'ensuring the appearance of aliens at future immigration proceedings' and '[p]reventing danger to the community.'" *Zadvydas*, 533 U.S. at 690. The Second Circuit has characterized these interests as "legitimate and their importance well-established." *Black v. Decker*, 103 F.4th 133, 153 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, No. 25-cv-886, 2026 WL 1718025 (U.S. June 15, 2026).

the United States without authorization. Before murdering Ms. Riley, "[t]he man had previously been arrested in a shoplifting case but had not been detained." *Congress Clears Measure to Deport Immigrants Accused of Crimes*, The New York Times (Jan. 22, 2025), *available at* https://www.nytimes.com/2025/01/22/us/politics/laken-riley-act.html. Senator John Thune remarked that the Act "would help reduce the chances of another tragedy like [that] one by requiring that illegal immigrants be detained when they are charged with theft-related crimes like the one for which Laken's killer was cited less than 5 months before he killed her." 171 Cong. Rec. S159-07, 2025 WL 207841 (Jan. 15, 2025).

Although Mr. Zepeda Galicia points to the absence of legislative findings in the Laken Riley act to distinguish this case from *Denmore* and to argue the Government cannot establish the required relationship, I disagree. Mr. Zepeda Galicia has not identified any case that holds that such findings are *necessary* to determine that a statute comports with substantive due process. I have not found such a case either. And the absence of such a requirement makes sense considering what is an "unexacting" standard. *Reno*, 507 U.S. at 306. Given this diminished burden, the publicly available anecdotal evidence about why Congress sought to expand mandatory detention for aliens who commit theft-related offenses, coupled with the statements during the floor debate, suffices to demonstrate that the Government's detention of Mr. Zepeda Galicia is reasonably related to Congress's goal of preventing a similar tragedy from occurring again.

Mr. Zepeda Galicia was charged with a shoplifting offense similar to the individual whose conduct motivated Congress to pass the Laken Riley Act, and the Government's detention of him pending his removal proceedings is reasonably related to the Government's interest in further protecting the public from aliens who have been involved in theft-related crimes but who local authorities have not detained. The fact that Mr. Zepeda Galicia has not been convicted of theft "following the full procedural protections our criminal justice system offers" does not render his detention unconstitutional. *Demore*, 538 U.S. at 513. Indeed, neither the members of the Communist party in *Carlson* nor the juvenile aliens in *Reno* received that level of process before the Supreme Court determined their respective limited, civil detentions comported with the Constitution's requirements.

Finally, the Government's interest outweighs Mr. Zepeda Galicia's constitutionally protected interest in avoiding physical restraint. Unlike the challenged detentions in *Zadvydas*, Mr. Zepeda Galicia has not made any showing that his detention is indefinite or "potentially permanent." *Zadvydas*, 533 U.S. at 691. In fact, despite bearing the burden to demonstrate that his custody violates federal law, Mr. Zepeda Galicia has not offered any evidence about how long he expects his removal proceedings to take. So, while I cannot say for sure that his detention will be as short as the Supreme Court predicted in *Demore*, it is certainly more limited than the indefinite detention that gave rise to a constitutional violation in *Zadvydas*.

While Mr. Zepeda Galicia contends that his detention violates procedural due process as well, my analysis as to substantive due process subsumes that claim. I have already decided that the Government may detain Mr. Zepeda Galicia without providing him with an initial bond hearing. Thus, failing to do so cannot violate procedural due process, and Mr. Zepeda Galicia has not argued that the Government must provide him with some alternate procedure(s). Certainly, alien detainees like Mr. Zepeda Galicia can challenge their detention under the Procedural Due Process Clause, but the Third Circuit has made clear that "[t]he most important factor is the duration of detention." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020). While the Court of Appeals has eschewed a brightline threshold for how long is too long, Mr. Zepeda Galicia has not shown, or even argued, that his detention without a bond hearing exceeds the limit that might trigger a violation of procedural due process. *See German Santos*, 965 F.3d at 212. Indeed, Mr. Zepeda Galicia's Counsel made clear during oral argument that he is not now challenging the length of his duration. Thus, he has not established that the Government's present detention of him violates his procedural due process rights. At least, not yet.

### C.    APA

Federal courts have the power to review certain agency actions. The APA defines the scope of the courts' ability to review such actions. In particular, the APA authorizes a court to "hold unlawful and set aside agency action, findings, and conclusions found to

be ... arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Mr. Zepeda Galicia contends that the Government's "application of 8 U.S.C. § 1225(b)(2) to [him] is arbitrary, capricious, and not in accordance with law" because, inter alia, that decision represents a change "in the agencies' policies and positions[.]" (ECF No. 1 at §§ 49-50.) But immigration authorities are detaining Mr. Zepeda Galicia under Section 1226(c)(1)(E).[11] Mr. Zepeda Galicia admits that this provision applies to him, and I have determined that—as applied to him—this statute does not violate his due process rights. Thus, regardless of whether the Government could detain Mr. Zepeda Galicia pursuant to another statutory provision does not matter, and Mr. Zepeda Galicia has not established a violation of the APA.

## IV.    CONCLUSION

Mr. Zepeda Galicia admits that he is subject to detention pursuant to 28 U.S.C. § 1226(c)(1)(E). That detention, at least applied to him, does not violate the Constitution. Thus, there is no basis to find that Government has him in custody in violation of law (including the APA), so I will deny his petition for habeas relief. An appropriate Order follows.

---

[11]    The Government contends that it could detain Mr. Zepeda Galicia pursuant to Section 1225(b)(2)(A) as well. While that is incorrect—given the analysis set forth in my prior decisions in *Kashranov v. J.L. Jamison*, Case No. 2:25-cv-05555-JDW, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025) and *Olimov v. Jamison,* No. 2:26-cv-00532-JDW, 2026 WL 596155 (E.D. Pa. Mar. 3, 2026)—it does not make a difference because Mr. Zepeda Galicia's detention under Section 1226(c)(1)(E) is lawful.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

JOSHUA D. WOLSON, J.

August 4, 2026